STATE OF VERMONT

ENVIRONMENTAL COURT

| | | |
|---|---|---|
| | } | |
| In re: R.L. Vallee, Inc. PUD – Preliminary Plat | } | Docket No. 100-5-07 Vtec |
| In re: R.L. Vallee, Inc. PUD – Final Plat | } | Docket No. 101-5-08 Vtec |
| (Appeals of Timberlake Associates, LLP)} | | |
| | } | |

Decision and Order on Pending Motions

Appellant Timberlake Associates, LLP, appealed from two decisions of the Development Review Board (DRB) of the City of South Burlington, approving a preliminary plat application and a final plat application by Appellee-Applicant R.L. Vallee, Inc. for a Planned Unit Development (PUD) at Spillane's Service Center at 811 Williston Road. Appellant is represented by David L. Grayck, Esq.; Appellee-Applicant is represented by Thomas G. Walsh, Esq.; and the City is represented by William E. Flender, Esq. Appellee-Applicant has moved for partial summary judgment on Questions 3 and 23 of the Consolidated Statement of Questions. Appellee-Applicant has also moved to dismiss Questions 12, 17, 18, 19, and 21 of the Consolidated Statement of Questions. For clarity of reference, this decision will refer to the questions from the statement of questions in the appeal of the preliminary plat with the designation "PQ," and in the statement of questions in the consolidated appeals with the designation "CQ."

In Docket No. 100-5-07 Vtec, Appellant appealed the DRB decision granting preliminary plat approval to Appellee-Applicant, and filed a statement of questions containing twenty-one questions. These questions did not refer to any specifically-numbered sections of the zoning ordinance. After the Court's August 17, 2007 decision and order on cross-motions for partial summary judgment, parties agreed to await the DRB's decision on the final plat approval, allowing any new appeal of the final plat

approval to be consolidated with the appeal of the preliminary plat approval. The Court ruled on an additional cross-motion for partial summary judgment as to PQ 21 on February 7, 2008.

In Docket No. 101-5-08 Vtec, Appellant appealed the DRB decision granting final plat approval, and filed a Statement of Questions containing twenty questions. These questions did refer to specifically-numbered sections of the zoning ordinance. The appeals were consolidated, and Appellant filed a Consolidated Statement of Questions combining the questions from both appeals that remained after the various motion rulings.

Appellee-Applicant has now moved to dismiss the following consolidated questions, which ask whether the proposed project complies with the respective specifically-numbered sections of the zoning ordinance: CQ 12: § 15.18(A)(8); CQ 17: §13.01(A); CQ 18: § 13.01(B)(1); CQ 19: § 13.01(N)(2); and CQ 21: § 14.06(B)(3).

Appellee-Applicant has also moved for summary judgment on CQ 3 and CQ 23. CQ 3 asks whether the project should the project "be required to meet the minimum setback and coverage requirements" of the zoning ordinance? CQ 23 asks whether the project requires conditional use approval "because it is multiple uses on one lot?" The following facts are undisputed unless otherwise noted.

Appellee-Applicant owns a 0.47-acre property with an existing service station and convenience store at 811 Williston Road, in the Commercial 1 zoning district and the Traffic Overlay 1 zoning district. Appellant owns an L-shaped parcel of property with an existing service station and convenience store at 801 Williston Road, which adjoins the southerly and westerly boundaries of Appellee-Applicant's property.

Appellee-Applicant applied for preliminary plat approval for a Planned Unit Development on the subject property, including the replacement of the existing 2,313 square foot building with a new building of the same square footage. The new building is proposed to house two uses: a convenience store (1,079 square feet) and a short-order

restaurant (1,234 square feet). Appellee-Applicant also proposes to reduce the number of fueling positions on the property from eight to six.

Appellee-Applicant's proposal was submitted for review as a Planned Unit Development under Article 15 of the City of South Burlington Land Development Regulations (Regulations).[1] Section 2.02 of the Regulations define a PUD as:

> [o]ne or more parcels of land to be developed as a single entity, the plan for which may propose any authorized combination of density or intensity transfers or increases, as well as the mixing of land uses. This plan, as authorized, may deviate from bylaw requirements that are otherwise applicable to the area in which it is located with respect to the area, density or dimensional requirements or allowable number of structures and uses per lot as established in any one or more districts created under the provisions of these regulations. . . .

Section 15.01 states that the purpose of PUD review is "to provide relief from the strict dimensional standards for individual lots in these Regulations in order to encourage innovation in design and layout, efficient use of land, and the viability of infill development and re-development in the City's Core Area . . . ."

PUD review is required for certain applications and elective for others. §§ 15.02(B), (C). Appellee-Applicant applied under § 15.02(C) to have its proposal reviewed as a PUD; that section allows "any applicant for site plan, conditional use and/or subdivision review, or any other application for land development requiring action by the [DRB]" to "request review pursuant to the PUD process and regulations."

Article 15 of the Regulations sets out the procedures and considerations for PUD approval. Like subdivision approval, PUD review is a three-stage process consisting first of sketch plan review under § 15.05, followed by preliminary plat review, §§

---

[1] All references to section numbers in this decision refer to sections of the City of South Burlington Land Development Regulations unless otherwise noted.

15.08(A), (B), and then by final plat review. §§ 15.08(C)-(E). Specific criteria for review of proposed PUDs are found in § 15.18.

Proposed PUD projects must also obtain site plan approval from the DRB under Article 14 of the Regulations. § 14.03(A)(6). Specific criteria for site plan approval are found in § 14.06. Certain "Supplemental Regulations" found in Article 13 also apply to proposed PUD projects, including specifically those in § 13.01 relating to "Off-Street Parking and Loading."

Motion to Dismiss

Appellee-Applicant argues that CQ 12, 17, 18, 19, and 21 should be dismissed because they were not raised in the appeal of the preliminary plat approval. However, Appellant did raise the issues in CQ 12, 17, 18, 19, and 21 in the appeal of the preliminary plat approval. The Statement of Questions filed in the appeal of the preliminary plat approval simply asked whether the project complied with certain requirements of the Regulations (or with requirements paraphrased from the Regulations) without specifying the specifically-numbered section of the Regulations that imposed the particular requirement. The more broadly-worded questions regarding the preliminary plat approval in fact were inclusive of all the issues raised in the five questions at issue in the present motion.[2]

CQ 12 asks whether the proposed project complies with a specific subsection of the PUD review criteria found in § 15.18. Specifically, CQ 12 refers to § 15.18(A)(8),

---

[2] Neither the Rules for Environmental Court Proceedings nor the statute granting jurisdiction in these cases require issues to be raised at a preliminary approval stage in order to preserve them for appeal at the final approval stage. See 10 V.S.A. § 8504; 24 V.S.A. § 4471; V.R.E.C.P. 5. In re Appeal of Carroll, 2007 VT 19, 181 Vt. 383, only specifically addresses the participation requirement for appellant standing under 24 V.S.A. § 4471: that participation at one stage of the multistage approval process is sufficient to meet that participation requirement. Carroll, 2007 VT 19, ¶¶ 1, 15.

regarding whether certain services and infrastructure have been designed in a manner that allows extension to adjacent properties. PQ 6 asked whether the project meets "the applicable criteria for a PUD." Since the applicable criteria for PUD review are found in § 15.18, PQ 6 incorporated all of the subsections of § 15.18, including the criteria in § 15.18(A)(8) referenced in CQ 12. Moreover, the text of CQ 12 is the equivalent in content to that of PQ 13. Compare CQ 12 ("[w]hether the [p]roject complies with [ ] Section 15.18(A)(8) with respect to whether the roads, recreation paths, stormwater facilities, sidewalks, landscaping, utility lines and lighting have been designed in a manner that is compatible with the extension of such services and infrastructure to adjacent properties,") with PQ 13 ("[i]s the [p]roject designed in a manner that roads, utilities, sidewalks, and lighting are designed to be consistent with City utility and roadway plans and standards, and adjacent properties?").

CQ 17, 18, and 19 all ask whether the project complies with certain specific subsections of the Supplemental Regulations regarding "Off-Street Parking and Loading" found in § 13.01. Two questions in the appeal of the preliminary plat approval also related to parking issues: PQ 16 and PQ 17. PQ 16, which asked whether the project is "designed to provide . . . safe pedestrian movement, and adequate parking areas," is broad enough to include the parking and parking-related safety issues in § 13.01 that are now raised by CQ 17, 18, and 19.

CQ 21 asks whether the project complies with a specific subsection of the site plan review criteria found in § 14.06. PQ 15 asked whether the project met the site plan review criteria of the ordinance. Since the site plan review criteria are found in § 14.06, PQ 15 incorporates all of the subsections of § 14.06, including § 14.06(B)(3), the subject of CQ 21.

As all five of the challenged consolidated questions were found within the initial statement of questions in Docket No. 100-5-07 Vtec, Appellee-Applicant's Motion to Dismiss them must be DENIED.

5

Motion for Summary Judgment

Appellee-Applicant has moved for summary judgment on CQ 3 and 23, which ask whether the project must meet minimum setback and coverage requirements, and whether conditional use approval is required for the project.

The DRB has authority to modify minimum setback and coverage requirements for PUDs under § 15.02(A)(3), which states that, "[i]n conjunction with PUD review, the modification of these [ ] Regulations is permitted subject to the conditions and standards in this Article and other applicable provisions of these Regulations." This allows the DRB to modify any portion of the Regulations, including those related to setbacks and coverage, for projects applying under the PUD review procedures. Material facts are disputed, however, as to whether any of the requested modifications of the regulatory requirements should be granted by the Court; so that Appellee-Applicant's Motion for Summary Judgment as to CQ 3 must be DENIED..

In review of a PUD application, a separate conditional use permit is not required, pursuant to § 15.03(A). That section provides that "[i]n any application for PUD review, all uses allowed as permitted or conditional uses in the underlying district(s) involved in the application shall be deemed to be permitted uses <u>and a separate conditional use permit or permits shall not be required</u>" (emphasis added). Under § 15.02(C), any applicant for a permit requiring DRB review may apply for approval of the project as a PUD. Thus a separate conditional use permit is not required in this PUD proceeding, and Appellee-Applicant's Motion for Summary Judgment as to CQ 23 must be GRANTED.

Of course, the issue of whether the project meets all the standards for PUD approval will be argued by the parties in their post-trial memoranda based on the evidence submitted at trial, including whether the purpose statement regarding PUDs in § 15.01 (to encourage innovation in design and layout, and efficient use of land) has any independent regulatory effect.

6

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicant's Motion for Partial Summary Judgment on Question 3 of the Consolidated Statement of Questions is DENIED, Appellee-Applicant's Motion for Partial Summary Judgment on Question 23 of the Consolidated Statement of Questions is GRANTED, and Appellee-Applicant's Motion to Dismiss Questions 12, 17, 18, 19, and 21 of the Consolidated Statement of Questions is DENIED.

Done at Berlin, Vermont, this 3rd day of October, 2008.

_____
Merideth Wright
Environmental Judge